# CASE SUPPLEMENTAL REPORT

Printed: 02/26/2014 15:23

**Elkhart Police Department**  OCA: **20021129008**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** CLEARED BY ARREST  **Case Mng Status:** CLEARED BY ARREST  **Occurred:** 11/28/2002
**Offense:** HOMICIDE

**Investigator:** BOURDON, J. A. (147)  **Date / Time:** 09/02/2003 09:41:01, Tuesday
**Supervisor:** PRICE, S. R. (308)  **Supervisor Review Date / Time:** 02/26/2014 00:00:00, Wednesday
**Contact:**  **Reference:** Evidence Tech Report

Members of the Homicide Unit viewed evidence in Bag #60, Item #61, which was prescription medications and pill dividers/planner that were recovered from the kitchen counter and stove from the apartment of Helen Sailor. Det. Lt. Snider requested these items be processed for latent impressions. On August 27, 2003 while in the Elkhart Police Department Lab area, I began taking 35mm photographs of the evidence bag that had been resealed after being viewed by the detectives of the Homicide Unit. I then opened the bag and laid out the contents, which consisted of the following:

1. One (1) plastic tub containing numerous prescription medication bottles.
2. One (1) Seifert Drug paper sack containing numerous prescriptions.
3. One (1) pill divider/planner that has lettering in big black letters for the days of the week.
4. One (1) pill divider/planner without these black letters.
5. Four (4) prescription bottles in a plastic cup, which I had previously placed in a separate bag contained in Item #61

After photographing these items, I began to process the pill divider/planner with the big black lettering on it. These pill planners have individual dividers for each day and then subdividers for taking medications at four times per day. These day dividers lift out of the white plastic holder they set in. First I processed the base unit, or holder for the day dividers, and in doing so, I observed several areas on the bottom that appeared to have latent impressions with possibly enough detail present for identification. At 1258 hrs. on August 27, 2003, I placed lifter A, which was a large lifter covering almost the entire bottom of this item. This was photographed in place and then recovered. I then began to process the individual day dividers. In doing so, on the divider for Sunday, which had a big black letter S marked on each compartment, I observed latent impressions with some detail present. I placed a lifter, which I identified as B, and subsequently photographed and recovered it. On the dividers for Monday and Tuesday, I was unable to observe any identifiable impressions. On the divider for Wednesday marked with a black letter W, I again observed an area with possibly identifiable impressions. I placed a lifter at 1316 hrs. and identified it as C. This was also photographed and recovered. On the dividers for Thursday, Friday, and Saturday, I was unable to observe any identifiable impressions. It should be noted, all this processing was done using dusting powders.

I then began to process the pill divider without the big black lettering on it. This was photographed first and then processed in the same fashion, doing the divider holder first. In doing so, I observed impressions on the bottom of this item. Using another large adhesive lifter, which I identified as D, this was placed at 1427 hrs., photographed, and subsequently recovered. I processed the dividers for Sunday, Monday, Tuesday, and Wednesday and was unable to observe any identifiable impressions on these items. On the day divider marked Thursday, I observed two separate areas with impressions present. I placed lifters, which I identifed as E and F, at 1439 hrs. and subsequently photographed and recovered these impressions. On the divider marked Friday, I observed several smudged areas,

EXHIBIT C

**Investigator Signature:** _____

r_supp3

Page 1

Elkhart Police Department                                                    OCA: **20021129008**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*  **Case Mng Status:** *CLEARED BY ARREST*  **Occurred:** *11/28/2002*
**Offense:** *HOMICIDE*

**Investigator:** *BOURDON, J. A. (147)*  **Date / Time:** *09/02/2003 09:41:01, Tuesday*
**Supervisor:** *PRICE, S. R. (308)*  **Supervisor Review Date / Time:** *02/26/2014 00:00:00, Wednesday*
**Contact:**  **Reference:** *Evidence Tech Report*

however, none with sufficient detail present for identification and on the divider marked Saturday, I was unable to observe any impressions.

On August 28, 2003, I continued with the processing of these items. At 0828 hrs., I processed the four prescription bottles and plastic cup that had been lined up on the counter in front of the pill divider/planners. I processed the plastic cup using dusting powders and was unable to observe any identifiable impressions. I dusted the four prescription bottles with powders. The bottle that contained the prescription for Isosorbide, dated 11/14/2002, I observed several ridge lines, however, not with sufficient detail for any type of identification to be made. I processed the prescription bottle for Amitriptyline, dated 9/19/02, and after examining it, I observed smudges, however, none with any detail present. I processed the prescription bottle marked KCL, dated 11/14/2002. Again, with the same results. I processed the prescription bottle for Aspirin, specifically coated Aspirin, dated 11/19/02, and in doing so, I observed one area that appeared to have a slight amount of detail present. I placed a lifter on this area at 0853 hrs. and identified it as G, which was subsequently photographed and recovered. In order to further process the paper labels on these prescription bottles, I treated them using a spray chemical process called ninhydrin. After having accelerated this process using heat and humidity, I observed several ridge lines on the KCL bottle, however, none with any detail. However, in examining the Amitriptyline bottle, I observed visible impressions that may possibly have enough detail present for an identification to be made. Due to this fact, this prescription bottle was not returned to its original packaging. It was bagged separately after having been fixed and placed to prevent the further development of the ninhydrin.

At 0920 hrs., I began to process the plastic tub that contained prescription medications. First I photographed this item with the medication bottles in it and since the medication bottles had not been spilled out at the scene, I focused my processing on the plastic tub containing them. I removed the prescription bottles and began processing the tub using dusting powders. In doing so, I observed numerous impressions and after having examining and identifying the areas where these impressions were located, I placed eight lifters at 0937 hrs. These were identified H thru O. As far as the description of the location where each impression was located, if you would turn the plastic tub upside down with the label facing you, the lifters identfied as H and I were lifted from the left side, J was lifted from the front, K and L were from the right side, M was from the back side, and N and O were from the top of the container.

After completing this processing, all these items with the exception of the Amitriptyline bottle, were returned to the original evidence bag and resealed noting on the seal, yesterday and today's date, noting the days of processing, and my initials. The adhesive lifters were secured as evidence and vouchered along with the Amitriptyline bottle. Also, Det. Conway requested any impressions found be compared to a subject by the name of Lana Canen. I found an Elkhart Police Department inked and rolled finger/palm print card dated April 14, 2003 in the Elkhart Police Department Records Division. This has the EPD number of 7992 on it and at approximately 1130 hrs., I recovered this

**Investigator Signature:**

# CASE SUPPLEMENTAL REPORT

Printed: 02/26/2014 15:23

Elkhart Police Department

OCA: **20021129008**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*  **Case Mng Status:** *CLEARED BY ARREST*  **Occurred:** *11/28/2002*
**Offense:** *HOMICIDE*

**Investigator:** *BOURDON, J. A. (147)*  **Date / Time:** *09/02/2003 09:41:01, Tuesday*
**Supervisor:** *PRICE, S. R. (308)*  **Supervisor Review Date / Time:** *02/26/2014 00:00:00, Wednesday*
**Contact:**  **Reference:** *Evidence Tech Report*

item as evidence. The photographs will be placed into photo pack #65903.

INFORMATION REFERRED TO CASE.

Det. Tech. Joel Bourdon 0147

JB/jy

**Investigator Signature:**