# EXHIBIT C

Cited portions of Deposition of Dennis Chapman
dated 09/07/2011 taken in *Lana R. Canen v. State of Indiana*,
Elkhart Circuit Court, Cause No. 20C01-0908-PC-00018

STATE OF INDIANA

IN THE ELKHART CIRCUIT COURT


LANA R. CANEN,                 )
                            )
        Petitioner,      )
                            )
    -vs-                  ) Cause No.
                            ) 20C01-0908-PC-18
STATE OF INDIANA,       ) 20C01-0409-MR-118
                            )
        Respondent.      )
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ )


The Deposition of DETECTIVE DENNIS CHAPMAN

Date:    Wednesday, September 7, 2011

Time:    1:04 o'clock p.m.

Place:   Elkhart County Prosecutor's Office
         301 South Main Street
         Elkhart, Indiana


Called as a witness by the Petitioner in

accordance with the Indiana Trial Rules,

pursuant to Notice.


Before Colleen R. Finchum, Court Reporter
Notary Public, St. Joseph County, Indiana

MIDWEST REPORTING, INC.
1448 Lincolnway East
South Bend, Indiana 46613
(574) 288-4242

2

1    APPEARANCES:

2

3          MS. CARA SCHAEFER WIENEKE
                Special Assistant to the
4                State Public Defender
                Wieneke Law Office, LLC
5                Post Office Box 188
                Plainfield, Indiana 46168

6

7          On behalf of the Petitioner;

8

9

10

11         MR. DAVID L. FRANCISCO
                Elkhart County Prosecutor's Office
12              Deputy Prosecuting Attorney
                301 South Main Street
13              Elkhart, Indiana 46516

14

15         On behalf of the Respondent.

16

17

18

19

20

21

22

23

24

25

6

1      they did, we attached the card to them.

2   Q  So it was sort of like an antiquated way to check

3      criminal history?

4   A  Right.

5   Q  All right.  And how would you -- how were the cards

6      indexed?  Obviously, not on a computer.

7   A  No, not -- we had big files we had to go through.

8   Q  Okay.  And then after the FBI, what did you do?

9   A  After the FBI?  Let's see.  I worked at the Cook

10     Nuclear Plant in Bridgman, Michigan.

11  Q  And what did you do there for them?

12  A  Security.

13  Q  All right.  How about after that?

14  A  After that I left there for a short time and went

15     to the border patrol, U.S. Border Patrol, went

16     through there for training.

17  Q  What did you do with them?

18  A  I was in training.  I didn't pass the Spanish part

19     of the test or the class, so I left.

20  Q  All right.  And then after that where did you go,

21     if you can remember?

22  A  Let's see.  I went to work at the juvenile

23     detention center in Berrien County.

24  Q  And what did you do there, were you like a CO, a

25     correctional officer, or --

8

1      a CSI?  What do you do differently?

2   A  Just a name.

3   Q  Okay.  So you're basically a CSI?

4   A  Right.

5   Q  Okay.

6   A  We just didn't want to be called CSI comparing to

7      the TV people.

8   Q  So you know how to do lifting prints --

9   A  Right.

10  Q  -- tool mark, all that sort of thing?

11  A  Yeah.  Yeah, my training was through the state

12     police.

13  Q  Gotcha.  And is that an academy, is that where --

14  A  Oh, they -- at that time when I went through it, it

15     was a four and-a-half week course they put on.

16     They had grants, we got equipment, free equipment

17     from them.  The class was free.  So they put that

18     on.  I think there was three or four classes

19     before.

20  Q  Okay.  And where did you learn how to -- where did

21     you first get training for fingerprint --

22  A  It was the FBI.

23  Q  -- evidence?

24        Okay.  What type of training did that involve?

25  A  That was 12 weeks learning how to classify and

9

| | | |
|---|---|---|
| 1 | | identify prints, compare prints. |
| 2 | Q | Okay.  When you say classify, what does that mean? |
| 3 | A | Well, now they don't do that anymore, so -- |
| 4 | Q | What would that involve? |
| 5 | A | They would -- classification prints are -- at that |
| 6 | | time the files would -- there was 12 -- no, 26 |
| 7 | | different units and they were male to male -- of |
| 8 | | course, broke up male and female.  And your |
| 9 | | fingerprint classification was based on -- it's |
| 10 | | part of the Henry System, it was also partly |
| 11 | | modified by the FBI, so you can break the file -- |
| 12 | | the files up in sort of smaller so you don't |
| 13 | | have -- looking all over for prints. |
| 14 | Q | Gotcha. |
| 15 | A | That makes it easier to locate them, because back |
| 16 | | then there was no AFA system so we did everything |
| 17 | | by hand. |
| 18 | Q | When we see -- on criminal history reports we'll |
| 19 | | see sort of fingerprint classification, they'll |
| 20 | | have -- |
| 21 | A | NCIC's. |
| 22 | Q | Yeah, NCIC. |
| 23 | | Is that sort of -- is that the Henry System or |
| 24 | | is that some -- |
| 25 | A | The NCIC is the classification. |

10

1   Q   Okay.

2   A   And from that you can tell what a print is.  It's

3       not -- because you're going to have several

4       different types of prints because it -- a lot of

5       prints can have the same classification, but it's

6       the individualization that makes them different,

7       so --

8   Q   Gotcha.  So if you start off with like classifying

9       as a loop, whorl --

10  A   Right.  There's a -- before we get them there's a

11      pre-classification made so they'd come to the unit

12      we were assigned to.  My first unit I was in the

13      female unit.  So then when the prints would come

14      there, they'd be partially classified and then we'd

15      finish classifying them and search the files.

16  Q   Gotcha.  I see.  All right.  Now, are you

17      considered a full time latent print examiner, are

18      you a full time CSI?  What -- you're a forensic

19      specialist?

20  A   Well, again, it's a small town.  We do a lot of

21      different things because we're also in charge of

22      the evidence, too.

23  Q   How many latent prints do you think you've compared

24      to known prints?

25  A   Oh, man.  Quite a few.

13

1    Q    Have you ever written any articles?

2    A    No.

3    Q    Do you ever read any of the journals that -- what

4         is it, the Journal of Forensic Identification is

5         maybe the big one?  Have you ever read any of

6         those?

7    A    No, I usually -- we get a lot of The Forensic

8         magazine, I think, and there's a couple other ones

9         we get.

10   Q    What about SWGFAST, have you ever heard of that?

11        Do you know -- can you explain what that is?

12   A    It's Scientific -- I can't remember what all the --

13        the initials are offhand --

14   Q    Okay.

15   A    -- but, yeah, I can remember --

16   Q    Okay.

17   A    -- because that was a complex latent print, that

18        wasn't --

19   Q    Yeah.  All right.

20             (Discussion held off the record.)

21   Q    Before we go into the specifics of this case I'd

22        like to know what -- what general methodology do

23        you use when you sit down and you're given a latent

24        print and a known, what -- how do you undertake

25        your examination, what do you do?

14

1    A    Well, the first thing I would look for is see if

2         they're the same pattern.  And if they're not, then

3         I know they're not from the same person right away.

4         If they are, then I'll examine them closer with a

5         magnifying glass.

6    Q    What are you looking for whenever you are looking

7         closer?  Let's say they are the same pattern; then

8         what?

9    A    Areas of similarity to your areas that aren't

10        similar.

11   Q    Is that similar -- and do you mean like points, is

12        that what you're referring to?

13   A    Well, they call them points, but we don't really

14        look for points when we're looking at a

15        fingerprint.  That's more or less for like a jury

16        would so they can point out here's a point here and

17        they can say, oh, yeah, I see it.  We don't

18        necessarily count points.

19   Q    Okay.  And you say you use a magnifying glass?

20   A    Right.

21   Q    Can you describe what that looks like?

22   A    It's a -- it's not a magnifying glass itself.  It's

23        a little instrument.  It looks like a -- I don't

24        know how to describe it.

25   Q    Sort like a shot glass flipped upside down or --

17

1    two loops I'm comparing, if one loop has like 15

2    ridges and the other one has three, you know, then

3    I can get a --

4  Q  When you say a number of ridges, where are you --

5    where do you start to --

6  A  You start at the delta, the second -- start at the

7    delta and you would count to the core.

8  Q  Gotcha.  What happens if you have a partial print

9    that doesn't have a delta or a core?

10 A  That makes it a little more difficult.  Then you

11   would have to try to find other areas that are --

12   if you can.  If not, you just can't make a

13   identification with it or a comparison.

14 Q  Now, I want to ask you about Lana Canen's case.

15   How did you first become involved in this, if you

16   remember?

17 A  I was contacted by Joel Borden, Elkhart City.

18 Q  Do you remember when he contacted you?

19 A  It was probably 2002 or 2003.

20 Q  Now, why would they contact you?  Do they not --

21   did they not have a fingerprint examiner?

22 A  No, they didn't.

23 Q  Okay.  And who is Joel Borden?

24 A  At that time he was one of their evidence persons.

25 Q  For Elkhart City?

25

```
1    Q    Christopher Kinsey?  Does that sound familiar?

2    A    No.

3    Q    Okay.  How do you know Charles Lambdin or do you

4         know him?

5    A    I just met him the time he came to the sheriff's

6         department.

7    Q    Can you tell me about what happened during that

8         meeting?

9    A    Well, he came there and asked to examine the -- he

10        was working for the -- or for the defense team.  He

11        asked to examine the print and so I made the print

12        available for him.

13   Q    Did he know what your conclusion had been at that

14        point, if you know?

15   A    I don't know if he did or not.

16   Q    Had you ever worked with him before on any other

17        case?

18   A    No, I -- he was gone before I started with the

19        sheriff's department.

20   Q    Did you have any interaction with him, did you talk

21        to him at all during that meeting?

22   A    Not until afterwards.

23   Q    Okay.  Do you recall what the conversation was

24        afterwards?

25   A    He just told me we did a good job, so --
```

28

1

2                                 CERTIFICATE

3

4           I, Colleen R. Finchum, a Notary Public, in
    and for the County of St. Joseph and State of
5   Indiana, do hereby certify:

6           That DETECTIVE DENNIS CHAPMAN appeared
    before me on Wednesday, September 7, 2011, and
7   was duly sworn to testify the truth, the whole
    truth, and nothing but the truth to questions
8   propounded at the taking of the foregoing
    deposition in a cause now pending and
9   undetermined in said court;

10          That I further certify I then and there
    reported stenographically the proceedings at the
11  said time and place; that the proceedings were
    then transcribed from my original shorthand
12  notes; and that the foregoing typewritten
    transcript is a true and correct record thereof.

13

14          That I am not a relative or employee of
    attorney or counsel, nor a relative or employee
    of such attorney or counsel for any of the
15  parties hereto, nor am I interested directly or
    indirectly in the outcome of this action.

16

17          IN WITNESS WHEREOF, I have hereunto

18      set my Notarial seal this _2nd_ day

19      of _September_ 2015, A.D.

20

21      _Colleen R. Finchum_
        Colleen R. Finchum
22      Notary Public, State Of Indiana
        Residence:  St. Joseph County
23      My Commission Expires:  11-08-16

24

25