# EXHIBIT P

Cited portions of Deposition of Charles Lambdin dated 08/10/2011, taken in *Lana R. Canen v. State of Indiana*, Elkhart Circuit Court, Cause No. 20C01-0908-PC-00018

STATE OF INDIANA

IN THE ELKHART CIRCUIT COURT

LANA R. CANEN,                        )
                                      )
        Petitioner,                   )
                                      )
    -vs-                              ) Cause No.
                                      ) 20C01-0908-PC-18
STATE OF INDIANA,                     ) 20C01-0409-MR-118
                                      )
        Respondent.                   )
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   )


The Deposition of CHARLES LAMBDIN

Date:   Wednesday, August 10, 2011

Time:   2:13 o'clock p.m.

Place:  Elkhart County Prosecutor's Office
        301 South Main Street
        Elkhart, Indiana

Called as a witness by the Petitioner in accordance with the Indiana Rules of Civil Procedure, pursuant to Notice.


Before Colleen R. Finchum, Court Reporter
Notary Public, St. Joseph County, Indiana

MIDWEST REPORTING, INC.
1448 Lincolnway East
South Bend, Indiana 46613
(574) 288-4242

```
                                                                    2
 1     APPEARANCES:

 2

 3           MS. CARA SCHAEFER WIENEKE
                 Wieneke Law Office, LLC
 4               Post Office Box 188
                 Plainfield, Indiana 46168
 5

 6           On behalf of the Petitioner;

 7

 8

 9           MR. DAVID L. FRANCISCO
                 Elkhart County Prosecutor's Office
10               Deputy Prosecuting Attorney
                 301 South Main Street
11               Elkhart, Indiana 46516

12
             On behalf of the Respondent.
13

14

15

16

17

18

19

20

21

22

23

24

25
```

5

1  A   Forensic science.
2  Q   Not to date you, but is that a long time ago, like
3      in the --
4  A   It'd be 1969, 1970, '71.
5  Q   All right.  And then after college where did you
6      work?
7  A   I was working at the police department at the time
8      I went to college.
9  Q   Which police department?
10 A   Elkhart City.
11 Q   Okay.  So you took that job right after college, so
12     probably in '70, '71?
13 A   No.  No.  I came to Elkhart in 1969.  I had retired
14     from the military and I came to Elkhart in '69 and
15     joined the police department and they sent me to
16     college for a year.
17 Q   To the forensic studies program?
18 A   Yeah.
19 Q   So you started working for the police department.
20     And how long did you work there?
21 A   20 years and three months.
22 Q   So from 1969, you said, on for 20 years?
23 A   Yes, to 1990.
24 Q   What were your duties there?
25 A   I started off -- I had been an electronic

9

```
 1   Q    Now, when you say you filed them, you mean filed
 2        them away?
 3   A    Uh-huh.
 4   Q    And then later you would withdraw them if there was
 5        a crime or something that there was a latent print
 6        found?
 7   A    Yeah.
 8   Q    Okay.
 9   A    Yeah.
10   Q    The FBI fingerprinting class, did it deal with
11        just, you know, general classifying or did it also
12        deal with how to do latent print examinations and
13        comparisons, if you remember?
14   A    I remember all of it, yeah.  Yeah.
15   Q    Now, when you worked for Elkhart were you
16        considered a full time latent print examiner or did
17        you have other duties, as well?
18   A    Other duties.  Yeah, I was a crime scene
19        investigator that covered rapes, robberies,
20        homicides, and suicides.
21   Q    So that was your official title when you last were
22        there, crime scene investigator?
23   A    Right.  Before it was poplar.
24   Q    It is poplar.
25             And how long were you a CSI?
```

1  Q   Okay.  Have you heard of something called
2      ridgeology?
3  A   Nope.
4  Q   All right.  Now, I want to ask you a little bit
5      about Lana's case in specific.  How did you first
6      become involved in her case?
7  A   Oh.
8  Q   Our case today, yeah.
9  A   Oh, yes.  Okay.
10 Q   Sorry about that.
11 A   Yes.  I was called by Bill Clark, an investigator
12     for -- what was his name that passed away?
13              MR. FRANCISCO:  Brent Zook?
14 A   Brent Zook.  Yeah, Brent Zook.  A public defender,
15     I believe.
16 BY MS. WIENEKE:
17 Q   Has Bill always been a PD investigator or was he a
18     police officer before?
19 A   He was a police officer.  We worked together on the
20     police department, yeah.  Not as a detective, but
21     he as a patrolman, me as a detective.
22 Q   Okay.  What -- do you know what his -- before he
23     went to the public defender's office, do you know
24     did he eventually become a detective or did he just
25     always stay a patrolman?

| | | |
|---|---|---|
| 1 | A | I believe he was always a patrolman. |
| 2 | Q | And then it looks like -- okay, so Bill Clark, did |
| 3 | | he contact you specifically? |
| 4 | A | Yes.  Called me at home. |
| 5 | Q | Okay.  Gotcha.  And you said, also, that you knew |
| 6 | | Clyde Brown and he worked with you for some time? |
| 7 | A | He was my assistant for many years, yeah. |
| 8 | Q | Do you know this -- this offense happened back in |
| 9 | | 2002.  Do you know if Mr. Brown, was he still |
| 10 | | working for the police department at that time? |
| 11 | A | 2002? |
| 12 | Q | 2002 to 2005 is sort of when the investigation was |
| 13 | | going on. |
| 14 | A | I retired in 1990 and he was still on the |
| 15 | | department.  He may have been off the department |
| 16 | | and retired and was working for the public |
| 17 | | defender, also. |
| 18 | Q | Okay.  Because I think he did start working with |
| 19 | | the public defender at some point, right?  I don't |
| 20 | | know if he's still there.  Is he still there? |
| 21 | A | I think so. |
| 22 | Q | Okay.  All right.  So you get this phone call from |
| 23 | | Mr. Clark.  What does he tell you? |
| 24 | A | He wanted to know if I would come in and compare a |
| 25 | | latent print with a known print. |

```
                                                                20

 1   Q    Did he tell you who the known print was of?
 2   A    Huh-uh.
 3   Q    And I assume you said yes?
 4   A    Uh-huh.
 5   Q    And then what did you --
 6   A    No, I said no, I did not know who it was.
 7   Q    Oh, I'm sorry.  I meant -- I assume you said yes,
 8        you would come in and compare, do the comparison?
 9   A    Yes, I did.  I meant coming in.
10   Q    And then what happened?  Do you remember
11        approximately when you came in and did that?
12   A    No, I don't.  I don't right offhand.
13   Q    If I --
14   A    Because I have no paperwork on that.  This was
15        really pretty casual and informal.
16   Q    Do you remember where you went to do the
17        comparison?
18   A    Elkhart County Sheriff's Department.
19   Q    I think on the phone you told me that it was at the
20        jail.  Was that at the time the same place --
21   A    Yes.
22   Q    -- and the same building?
23            Gotcha.  And I guess it still is, right, if I
24        remember.
25            So you go down to the sheriff's department.
```

| | | |
|---|---|---|
| 1 | | And did you meet with anybody there? |
| 2 | A | Yes. I met with a uniform officer who, I guess, |
| 3 | | was also a crime scene investigator. I don't |
| 4 | | recall his name. |
| 5 | Q | Would it have been Detective Borden -- |
| 6 | A | Yes. |
| 7 | Q | -- does that sound familiar? |
| 8 | A | Yes, that sounds familiar. |
| 9 | Q | Okay. Or could it have been Detective Chapman? Or |
| 10 | | do you know Mr. Chapman? |
| 11 | A | I don't know either one of them. |
| 12 | Q | So you meet with the uniformed officer. And did he |
| 13 | | sit you somewhere or -- |
| 14 | A | Yeah, we went into a private office and sat down as |
| 15 | | we are now, and he brought me the fingerprint card |
| 16 | | and the latent print. |
| 17 | Q | And what exactly did he bring you? He brought you |
| 18 | | one latent print and then how many fingerprint |
| 19 | | cards, just one? |
| 20 | A | (Witness nodding head.) |
| 21 | Q | Did he bring you a ten print -- |
| 22 | | Sorry, is that a yes, are you saying yes when |
| 23 | | you nod; is that -- |
| 24 | A | Yes. |
| 25 | Q | Okay. And was it a ten print card or was it just |

```
 1         one -- one known fingerprint, one known rolled
 2         print?
 3   A     The latent print?
 4   Q     The latent print was on a lifter.
 5   A     On a lifter.
 6   Q     The other one, how was it --
 7   A     Was on a standard fingerprint card like we used
 8         down at our station, I guess a statewide print
 9         probably.
10   Q     So there'd be some ten prints and then probably
11         some palms?
12   A     Right.
13   Q     Gotcha.  Okay.  And then -- and there was only one
14         ten print card or were there more?
15   A     One.
16   Q     One.  Did it have a name on it?
17   A     I'm pretty sure it did.  I didn't recall it until I
18         seen the name, but I think it said Lana Canen.
19   Q     And were you asked to compare all ten prints to the
20         latent or were you asked to compare a particular
21         one to the latent?
22   A     No, looked at all of them.
23   Q     Okay.  Were you told that somebody had -- that one
24         of the fingerprint examiners had already made an
25         identification or did you somehow know that?
```

1  A   I think someone else had looked at it and narrowed
2      it down, yes.
3  Q   Okay.  And when you looked at the prints
4      side-by-side, what was your conclusion, what did
5      you decide?
6  A   Well, there was one -- one print, and I don't
7      remember at this time which print it was, but I
8      believe it was either the little finger or the one
9      next, the ring finger, that was very similar in
10     nature to the latent print.
11 Q   Okay.  Did you take any notes or anything while you
12     were doing it or were you just looking?
13 A   Just looking.
14 Q   Okay.  Do you know, did you find any particular
15     points of comparison or were you just doing sort of
16     a -- just a quick --
17 A   Well, I was doing it sort of quick to narrow it
18     down to the -- to the one finger and then I started
19     trying to get points off of it.  And it -- it was a
20     very small print, it was a very partial print, it
21     wasn't a full print and --
22 Q   And you're referring to the latent when you --
23 A   The latent -- the latent was a very small, partial
24     print, and there appeared to me to be several of
25     them that I would say were the same.

1  Q    Okay. Did you -- if you were getting this case for
2       the first time, is your conclusion then that that
3       was a match?
4                    MR. FRANCISCO:  Objection.
5              It's calling for speculation.  It's
6              also -- I don't believe there's
7              adequate foundation for this
8              particular question.
9  BY MS. WIENEKE:
10 Q    Maybe I should rephrase a little bit.
11          After doing your examination did you conclude
12      that this was a match, that the two prints matched?
13 A    The prints were close enough in nature that I
14      couldn't say no and I couldn't say yes.
15 Q    So there were some similarities but you would not
16      have -- but you weren't comfortable saying yes,
17      this is a match; is that --
18 A    No.  No.  But I would not have had it thrown away,
19      either.  My suggestion should've been -- I didn't
20      do this, but I should've told them to refer it to
21      the state police or the FBI for better analysis due
22      to the improvement of the equipment to check
23      fingerprints today which I didn't have when I was
24      in that.
25 Q    Let me ask you this.  If I understand right, there

50

## CERTIFICATE

I, Colleen R. Finchum, a Notary Public, in and for the County of St. Joseph and State of Indiana, do hereby certify:

That CHARLES LAMBDIN appeared before me on Tuesday, August 10, 2011, and was duly sworn to testify the truth, the whole truth, and nothing but the truth to questions propounded at the taking of the foregoing deposition in a cause now pending and undetermined in said court;

That I further certify I then and there reported stenographically the proceedings at the said time and place; that the proceedings were then transcribed from my original shorthand notes; and that the foregoing typewritten transcript is a true and correct record thereof.

That I am not a relative or employee of attorney or counsel, nor a relative or employee of such attorney or counsel for any of the parties hereto, nor am I interested directly or indirectly in the outcome of this action.

IN WITNESS WHEREOF, I have hereunto set my Notarial seal this 4th day of September 2011, A.D.

Colleen R. Finchum
Notary Public, State Of Indiana
Residence:  St. Joseph County
My Commission Expires:  11-08-16