## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| LANA CANEN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:14-CV-315 |
| | ) | |
| DENNIS CHAPMAN, in his individual | ) | |
| Capacity as Deputy for the Elkhart County | ) | |
| Sheriff's Department, and MARK DAGGY, | ) | |
| in his individual capacity as Officer for the | ) | |
| Elkhart Police Department, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**Memorandum of Law in Support of**
**Defendant Dennis Chapman's Motion for Summary Judgment (ECF No. 41)**
**and in Response to Plaintiff Lana Canen's Motion for Summary Judgment (ECF No. 28)**

Michael F. DeBoni (#12434-20)
Nathaniel M. Jordan (#23625-20)
Landon K. Richmond (#32124-20)
YODER, AINLAY, ULMER & BUCKINGHAM, LLP
130 N. Main Street, P.O. Box 575
Goshen, IN 46527-0575
Telephone: (574) 533-1171
Facsimile: (574) 534-4174
mdeboni@yaub.com
njordan@yaub.com
lrichmond@yaub.com

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page ii

# Table of Contents

Table of Authorities.................................................................................................................iv

I.      Introduction ..................................................................................................................1

II.     Statement of issues .......................................................................................................1

III.    Nature of case ...............................................................................................................2

IV.     Status of case ................................................................................................................3

V.      Statement of genuine disputes.....................................................................................4

VI.     Standard of review ........................................................................................................4

VII.    Summary of argument ..................................................................................................4

VIII.   Argument.......................................................................................................................6

        A.      A *Brady* violation is a due process violation that occurs when the government
                fails to turn over exculpatory or impeaching evidence to a criminal
                defendant. ........................................................................................................6

        B.      Chapman committed no *Brady* violation, as he accurately provided
                information about his fingerprint experience and training, as information
                about experience and training he did not have was available through
                reasonable diligence and is not *Brady* evidence, and as such information was
                not material..................................................................................................11

                1.      Information regarding training or experience that Chapman did not
                        have is not *Brady* evidence, and it is not exculpatory or impeaching..............11

                2.      Chapman did not deliberately withhold or knowingly suppress
                        information about his experience or training, and information about
                        his experience or training—including any experience or training he
                        did not have—was available to Canen through reasonable diligence. ...........14

                3.      There is no reasonable probability that prejudice ensued when
                        Chapman accurately provided information about his experience and
                        training..................................................................................................21

        C.      Chapman is entitled to qualified immunity because his conduct did not
                violate clearly established statutory or constitutional rights. .........................22

                1.      Governmental actors performing discretionary functions are shielded
                        from liability for civil damages when their conduct does not violate

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page iii

clearly established statutory or constitutional rights of which a
reasonable person would have known. ................................................................ 22

2.     Chapman did not violate a constitutional right, and no clearly
established constitutional right required Chapman to volunteer
unsolicited information regarding experience and training that he did
not have. ................................................................................................................ 23

IX.    Conclusion ................................................................................................................... 25

Certificate of Service ................................................................................................................ 25

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page iv

## Table of Authorities

### Cases

| | Page |
|---|---|
| *Beaman v. Souk,* 7 F. Supp. 3d 805 (C.D. Ill. 2014), *aff'd sub nom Beaman v. Freesmeyer,* 776 F.3d 500 (7th Cir. 2015) | 7, 11, 23 |
| *Beauchamp v. State,* 788 N.E.2d 881 (Ind. Ct. App. 2003) | 9 |
| *Bennett v. Richmond,* 960 N.E.2d 782 (Ind. 2012) | 10, 18 |
| *Bowens v. State,* 481 N.E.2d 1289 (Ind. 1985) | 10 |
| *Bradford v. State,* 988 N.E.2d 1192 (Ind. Ct. App. 2013) | 9 |
| *Brady v. Maryland,* 373 U.S. 83 (1963) | 1 |
| *Buckley v. Fitzsimmons,* 20 F.3d 789 (7th Cir. 1994) | 9, 20 |
| *Burnett v. State,* 815 N.E.2d 201 (Ind. Ct. App. 2004) | 9, 10 |
| *Carvajal v. Dominguez,* 542 F.3d 561 (7th Cir. 2008) | 6, 7, 8 |
| *City & Cty. of San Francisco, Cal. v. Sheehan,* 135 S.Ct. 1765 (2015) | 22 |
| *Cone v. Bell,* 556 U.S. 449 (2009) | 11, 22 |
| *Daniels v. Williams,* 474 U.S. 327 (1986) | 7 |
| *Fox v. State,* 506 N.E.2d 1090 (Ind. 1987) | 8, 9, 10 |
| *Harris v. Kuba,* 486 F.3d 1010 (7th Cir. 2007) | 6, 8 |
| *Howerton v. Red Ribbon, Inc.,* 715 N.E.2d 963 (Ind. Ct. App. 1999) | 10 |
| *Ienco v. Angarone,* 429 F.3d 680 (7th Cir. 2005) | 7 |
| *Jenkins v. State,* 627 N.E.2d 789 (Ind. 1993) | 9, 10, 11 |
| *Johnson v. State,* 384 N.E.2d 1035 (1979) | 8 |
| *Kingsley v. Hendrickson,* 2015 WL 5210679 (7th Cir. Sept. 8, 2015) | 23 |
| *Kyles v. Whitley,* 514 U.S. 419 (1995) | 11 |

Lana Canen v. Dennis Chapman, et al.
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page v

*Laux v. State*, 985 N.E.2d 739 (Ind. Ct. App. 2013), *transfer denied*,
    987 N.E.2d 521 (Ind. 2013)..................................................................... 11

*Lowery v. State*, 478 N.E.2d 1214 (Ind. 1985)........................................... 10

*Malley v. Briggs*, 475 U.S. 335 (1986) ..................................................... 22

*Martin v. Roberts*, 464 N.E.2d 896 (Ind. 1984) ......................................... 9

*Molina, ex rel. Molina v. Cooper*, 325 F.3d 963 (7th Cir. 2003).................. 23

*Newsome v. McCabe*, 260 F.3d 824 (7th Cir. 2001) ................................ 7, 24

*Otte v. State*, 967 N.E.2d 540 (Ind. Ct. App. 2012) .................................. 10

*Pearson v. Callahan*, 555 U.S. 223 (2009)........................................... 22, 23

*Saucier v. Katz*, 533 U.S. 194 (2001) ....................................................... 22

*Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453 (Ind. 2001)................... 10

*Sornberger v. City of Knoxville,* 434 F.3d 1006 (7th Cir. 2006) .................... 8

*Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2007) ....................................... 7, 23

*Stinson v. Gauger*, 2015 WL 5011961 (7th Cir. Aug. 25, 2015),
    as corrected (Aug. 26, 2015) ....................................................1, 4, 5, 19, 24

*Strong v. State*, 538 N.E.2d 924 (Ind. 1989) .............................................. 11

*United States v. Bagley,* 473 U.S. 667 (1985).............................................. 12

*United States v. Banks*, 546 F.3d 507 (7th Cir. 2008)............................. 12, 13

*United States v. Moon,* 512 F.3d 359 (7th Cir. 2008)................................... 13

*Weinstock v. Ott*, 444 N.E.2d 1227 (Ind. Ct. App. 1983)............................... 9

*West v. Atkins*, 487 U.S. 42 (1988)............................................................. 6

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page vi

## Statutes & Rules

18 U.S.C. § 3006A(e)(1) ............................................................................... 13

42 U.S.C. § 1983 ....................................................................................... 6, 7, 17

Fed. R. Civ. P. 56 ........................................................................................ 4

Fed. R. Evid. 607 ........................................................................................ 12

Fed. R. Evid. 608 ........................................................................................ 12

Ind. R. Evid. 607 ........................................................................................ 12

Ind. R. Evid. 608 ........................................................................................ 12

Ind. R. Evid. 702 ................................................................................. 1, 9, 10, 21, 24

N.D. Ind. L.R. 56-1(b)(2) ............................................................................ 4

U.S. Const. amend. IV ................................................................................ 3

U.S. Const. amend. XIV .............................................................................. 3

## Secondary Authorities

*Evidence, Black's Law Dictionary* (10th ed. 2014) ...................................... 6, 12

Peter E. Peterson, et al., *Latent Prints: A Perspective on the State of the Science,* Forensic Science Communications (October 2009), https://www.fbi.gov/about-us/lab/forensic-science-Communications/fsc/oct2009/review ................................................................ 16

Simon A. Cole, *More than Zero: Accounting for Error in Latent Fingerprint Identification,* 95 J. Crim. L. & Criminology 985 (2005)........................................................ 16

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 1

## I.    Introduction

Ten years ago in a criminal murder prosecution, Dennis Chapman ("Chapman"), a prosecutor's expert fingerprint identification witness, was incorrect when concluding that a fingerprint found at a crime scene matched Lana Canen's ("Canen") fingerprint. This lawsuit is not about that mistake. This lawsuit is not about Chapman fabricating evidence, hiding witnesses, altering test results, coercing witnesses, or any other topic that violates rights established by *Brady v. Maryland*, 373 U.S. 83 (1963)—none of those things happened. It's also not about Chapman lying at trial or in preparation for trial—that did not happen, and even if it had, witnesses have absolute immunity from suit on claims stemming from their testimony at trial and, as a corollary, from their preparation to testify at trial. *Stinson v. Gauger*, Nos. 13-3343, 13-3346, 13-3347, 2015 WL 5011961, at *6 (7th Cir. Aug. 25, 2015), as corrected (Aug. 26, 2015).

This is what this lawsuit is about: Canen, having reversed her conviction by challenging Chapman's fingerprint analysis in post-conviction relief proceedings, claims in this civil suit that she had a right to more information from Chapman about his experience and training. More precisely, Canen claims Chapman had an obligation under *Brady* to identify information about types of experience and training related to latent fingerprint identification that he did not have and to report this information, even when no one asked him about it. There is no question Chapman accurately provided information about experience and training that he had to the prosecutor and that he testified accurately at trial. And Chapman's experience and training were sufficient to permit him to testify under Indiana Rule of Evidence 702.

## II.    Statement of issues

A *Brady* violation is a due process violation for failure to turn over "exculpatory/impeaching evidence" to a criminal defendant as constitutionally required. A civil claim based on a violation of

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 2

the *Brady* rule has these elements: (1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been deliberately withheld or knowingly suppressed by the government, although suppression does not occur when the defendant could have discovered evidence herself through reasonable diligence; and (3) there is a reasonable probability that prejudice ensued.

These are the issues presented to the Court:

1. Was information regarding fingerprint training or experience that Chapman did not have *Brady* evidence?

2. Was information regarding fingerprint training and experience that Chapman did not have deliberately withheld where the undisputed evidence demonstrates that Chapman disclosed his training and experience to the prosecutor and thereafter testified truthfully at trial concerning his training and experience?

3. Did Canen exercise reasonable diligence to discover information regarding fingerprint training or experience Chapman did not have, where Canen took no steps before or during trial to ask about Chapman's training and experience?

4. Is there a reasonable probability that prejudice ensued by Canen not being provided information regarding training and experience Chapman did not have where the undisputed evidence demonstrates that Chapman was qualified to testify, and Canen presented no evidence contradicting Chapman's opinion?

5. Did Canen have a clearly established constitutional right in 2005 requiring Chapman to identify fingerprint training and experience that he did not have and disclose it as *Brady* evidence, and would a reasonable officer in Chapman's position have known this?

## III.    Nature of case

On Thanksgiving evening, November 28, 2002, Helen Sailor ("Sailor"), an elderly tenant of Waterfall Highrise Apartments in Elkhart, Indiana, was murdered. Three years later, the State of Indiana convicted two people for Sailor's murder: Canen and Andrew Royer ("Royer"). Seven years after that, Canen overturned her conviction through post-conviction relief proceedings.

After she overturned her conviction, Canen sued Detective Mark Daggy ("Daggy") of the Elkhart, Indiana Police Department ("Elkhart City Police") and Chapman of the Elkhart County

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 3

Sheriff's Department ("Sheriff's Department") in their individual capacities, under 42 U.S.C. 1983 in Elkhart Superior Court 1, Elkhart County, Indiana, under Cause Number 20D01-1401-CT-19. On February 17, 2014, Chapman removed Canen's lawsuit to this Court, under the above caption.

Daggy worked on the murder investigation. Chapman, a Sheriff's Department detective, analyzed fingerprint evidence. Both testified at Canen's criminal trial, but the two never spoke to each other concerning the Canen case and Daggy made no request to Chapman to conduct the fingerprint analysis. At the time of trial, Chapman had concluded that a fingerprint at the crime scene matched Canen's fingerprint. Later, during Canen's post-conviction relief proceedings, Canen hired an expert to challenge the earlier fingerprint analysis, and the new expert concluded that the crime scene fingerprint did not match Canen's. After receiving the new expert's analysis, Chapman concluded and admitted that his analysis had been mistaken and that the fingerprint did not match Canen's.

Canen claims that Chapman and Daggy violated her Fourth and Fourteenth Amendment rights by falsely imprisoning her and violating due process.[1] In Canen's summary judgment motion, she defines her claim against Chapman as a claim for violation of her right to due process under *Brady*. Mot. Summ. J. 1, ECF No. 28. Canen claims that Chapman held himself out as a fingerprint analysis expert and failed to provide the prosecutor and Canen's counsel information regarding training and experience Chapman did not have related to latent fingerprint analysis. This, she claims, was a suppression of evidence in violation of *Brady*.

## IV. Status of case

The discovery period closed on May 30, 2015. ECF No. 26.

---

[1] The first page of the Complaint also references malicious prosecution, Compl. 1, ECF No. 5, but the Complaint's Section V, titled "Claims," sets forth a false imprisonment and due process claim without any reference to a malicious prosecution claim, Compl. 5.

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 4

On June 11, 2015, Canen moved for summary judgment against Chapman. ECF No. 28.

Chapman's deadline to respond to Canen's motion is September 10, 2015. ECF No. 38.

On July 14, 2015, Daggy moved for summary judgment against Canen. ECF No. 35. Canen's

deadline to respond to Daggy's motion is September 14, 2015. ECF No. 40.

Trial has not been scheduled. Canen has made a jury demand. ECF No. 5.

## V.      Statement of genuine disputes

Chapman is filing this memorandum to support his own motion for summary judgment,

ECF No. 41, and to respond to Canen's motion for summary judgment, ECF No. 28. Local Rule

56-1(b)(2) requires a party filing a summary judgment response to include a section labeled

"Statement of Genuine Disputes" that identifies the material facts that the party contends are

genuinely disputed so as to make a trial necessary. But here, there are no genuinely disputed material

facts so as to make a trial necessary, and the law requires judgment in Chapman's favor.

## VI.      Standard of review

A party may move for summary judgment, identifying each claim or defense—or the part of

each claim or defense—on which summary judgment is sought. Fed. R. Civ. P. 56 (2015). A court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law. *Id.*

## VII.      Summary of argument

Two weeks ago, the Seventh Circuit granted qualified immunity to expert odontologists sued

for fabricating opinions and suppressing evidence of the fabrication in violation of a criminal

defendant's right to due process of law. *Stinson*, 2015 WL 5011961, at *1. *Stinson* came to the Seventh

Circuit on appeal from the district court's denial at summary judgment of a claim of absolute or

qualified immunity from suit. *Id.* The Seventh Circuit agreed that absolute immunity did not apply

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 5

because the plaintiff sued the experts primarily for their investigative misconduct, not their testimony at trial. *Id.* But it ruled the defendants remain protected by qualified immunity, because the plaintiff did not present evidence showing the experts violated a clearly established constitutional right. *Id.* The Seventh Circuit found that the plaintiff's evidence, accepted as true, showed at most the experts were negligent, not that they fabricated their opinions. *Id.* An error in forensic analysis—even a glaring error—is not actionable as a violation of due process, wrote the Seventh Circuit. *Id.* And as to the evidence-suppression claim, the Seventh Circuit found that it was wholly dependent on the unsupported allegation of fabrication. *Id.* For these reasons, the Seventh Circuit found qualified immunity and reversed the district court's decision. *Id.*

Likewise, Chapman violated no constitutional rights of Canen, and certainly none that were clearly established in 2005. Canen does not claim that Chapman's analytical mistake about fingerprint identification was a constitutional violation. A mistake in forensic analysis—even an egregious mistake—may be grievous, but an expert who renders a mistaken opinion is protected by qualified immunity. *Stinson*, 2015 WL 5011961, at *9. Fabricated opinion evidence must be both wrong and *known to be wrong* by the expert. *Id.* (emphasis from original).

Canen's claim is that Chapman violated *Brady* by failing to identify experience and training that he did not have, to decide whether training and experience he did not have might affect his analysis if he had had it, and then to inform the prosecutor of that information. That's not a *Brady* claim. That information is not evidence, either exculpatory or impeaching. Chapman did not deliberately withhold or knowingly suppress that information, which was in any case available to Canen through reasonable diligence. And there is no reasonable probability that such information was material.

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 6

This court should grant summary judgment to Chapman because he did not violate any constitutional right of Canen, and because even if he did, that right was not clearly established in 2005.

## VIII.  Argument

### A.  A *Brady* violation is a due process violation that occurs when the government fails to turn over exculpatory or impeaching evidence to a criminal defendant.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights secured by the Constitution and laws of the United States and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988). A *Brady* violation is a due process violation for failure to turn over "exculpatory/impeaching evidence" to a criminal defendant as constitutionally required. *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). Its elements are: (1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued—in other words, materiality. *Id.* at 566-67.

**Favorable evidence element.** As to the favorable-evidence element of *Brady*, which regards either exculpatory or impeaching evidence, if numerous inferences are required for the evidence to be favorable to the accused, this element is not satisfied, *Harris v. Kuba*, 486 F.3d 1010, 1016 (7th Cir. 2007). Black's Law Dictionary defines exculpatory evidence as "evidence tending to establish a criminal defendant's innocence." *Evidence*, Black's Law Dictionary (10th ed. 2014). Rules 607 and 608 of the Federal Rules of Evidence and the Indiana Rules of Evidence provide that a party may impeach a witness by attacking the witness' character for truthfulness or untruthfulness.

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 7

  **Suppression element.** As to the suppression element of *Brady*, evidence is suppressed

under *Brady* when (1) the prosecution failed to disclose the evidence in time for the defendant to use

it, and (2) the evidence was not otherwise available to the defendant through exercising reasonable

diligence. *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005). Suppression does not occur when the

defendant could have discovered evidence himself through reasonable diligence. *Carvajal*, 542 F.3d at

567. The Fourteenth Amendment's due process clause is not implicated by a negligent act of an

official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams*, 474 U.S.

327, 328 (1986). *See, e.g., Beaman v. Souk*, 7 F. Supp. 3d 805, 826 (C.D. Ill. 2014), *aff'd sub nom. Beaman*

*v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015) ("Defendants argue there is no evidence of intentional

suppression from the prosecutor. Negligence or even gross negligence do not create a due process

violation actionable under § 1983."). If all a plaintiff can prove is that officers failed to take initiative

in providing prosecutors with information that would have come out when prosecutors asked (or as

soon as defense counsel interviewed the police or questioned them on the stand), then no due

process violation by the police has been established. *Newsome v. McCabe*, 260 F.3d 824, 825 (7th Cir.

2001). A constitutional problem arises if the right characterization of the defendants' conduct is that

they deliberately withheld information, *id.*, or that they knowingly suppressed *Brady* evidence, *see, e.g.,*

*Steidl v. Fermon*, 494 F.3d 623, 632 (7th Cir. 2007).

  Even when an officer lies at trial, *Brady* is not violated. In *Carvajal*, 542 F.3d at 567, the

alleged *Brady* violation consisted of a detective not testifying truthfully about when he first received a

photograph. The court stated that *Brady* would not extend to a situation where a police officer makes

a false statement to a prosecutor:

    At the most (as we must assume from the conflicting recollections of when the
    photo may have been viewed), the facts could support an inference that Dominguez
    did see the photo before the first pickup and that he lied about when he saw the

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 8

> photograph. But a lying witness is certainly not a *Brady* violation. It is already
> established law that *Brady* does not extend so far as to provide relief in a situation
> where "a police officer makes a false statement to a prosecutor." *Harris v. Kuba*, 486
> F.3d 1010, 1017 (7th Cir. 2007) ("Harris essentially seeks an extension of *Brady* to
> provide relief if a police officer makes a false statement to a prosecutor by arguing
> that an officer is 'suppressing' evidence of the truth by making the false statement.
> This court has already foreclosed this extension."); *see also Sornberger v. City of Knoxville*,
> 434 F.3d 1006, 1029 (7th Cir. 2006) ("The Constitution does not require that police
> testify truthfully; rather the constitutional rule is that the defendant is entitled to a
> trial that will enable jurors to determine where the truth lies." (citations omitted)).

*Id.* at 567.

It is the criminal defendant's responsibility to probe witnesses and investigate their versions of the relevant events. *Id.* at 567 ("[B]oth [witnesses] were accessible to the defense for the hearing on the motion to suppress the identification in the criminal case. . . . There was nothing preventing [the criminal defendant] from discovering and drawing out this discrepancy between the officers' stories during the suppression hearing.")

Criminal defendants in Indiana can discover information about a prosecution expert these ways:

**Deposition.** Before a prosecution expert testifies at trial, the criminal defendant can depose him. *See, e.g., Johnson v. State*, 384 N.E.2d 1035, 1039 (1979) (holding continuance of trial necessary for defendant to depose surprise expert witness prior to expert testifying).

***Voir dire* examination.** The criminal defendant can ask preliminary questions of a prosecution expert witness regarding his qualifications before determination that he is entitled to testify as an expert witness. *See, e.g., Fox v. State*, 506 N.E.2d 1090, 1095 (Ind. 1987) (holding that while mere failure to permit expert *voir dire* does not constitute error without showing of prejudice, "Such use of preliminary questioning can often serve the goals of efficient trial procedure and should be encouraged.") *Voir dire* examination of an expert can be conducted outside of the jury's

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 9

presence. *See, e.g., Weinstock v. Ott*, 444 N.E.2d 1227, 1231 (Ind. Ct. App. 1983); (Ex. J-Becker Dep.,

63:6-14; 71:20-25; 72:1-11).

**Cross-examination.** The criminal defendant can cross-examine the prosecution expert.

*Jenkins v. State*, 627 N.E.2d 789, 794 (Ind. 1993) (citing *Martin v. Roberts*, 464 N.E.2d 896, 900-01

(Ind. 1984)) ("The determination of which factors, formulas or calculations are necessary . . . to

form an expert opinion is within the knowledge and judgment of the expert and . . . is a subject

which can be approached and examined in the cross-examination or by bringing forward other

expert witnesses.") Neither shopping for a favorable witness nor hiring a practitioner of junk science

is actionable, although it may lead to devastating cross-examination if the judge permits the witness

to testify. *Buckley v. Fitzsimmons*, 20 F.3d 789, 796 (7th Cir. 1994).

Having discovered information regarding the prosecution's expert, the criminal defendant

can hire her own expert, even if she is indigent. *See Beauchamp v. State*, 788 N.E.2d 881, 889-90 (Ind.

Ct. App. 2003) ("In our view, it is apparent that [the criminal defendant] successfully satisfied the

requirement of showing legitimate need for the experts and how they might inure to his benefit . . .")

Depending on what the criminal defendant learns about the prosecution expert's

qualifications, the criminal defendant can object to his testimony. *See, e.g., Bradford v. State*, 988

N.E.2d 1192, 1206 (Ind. Ct. App. 2013). Indiana Rule of Evidence 702(a) allows expert testimony if

it "will help the trier of fact to understand the evidence or to determine a fact in issue." It is within

the trial court's sound discretion to decide whether a person qualifies as an expert witness. *Burnett v.*

*State*, 815 N.E.2d 201, 204 (Ind. Ct. App. 2004); *Fox*, 506 N.E.2d at 1095. To qualify as an expert,

two requirements must be met:

First, the subject matter of the expert's opinion must be so distinctly related to some
science, profession, business or occupation as to be beyond the knowledge of the
average lay person. Second, the witness must have sufficient skill, knowledge or

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 10

> experience in the field to make it appear that the witness' opinion or inference will
> aid the trier of fact in the search for truth.

*Fox*, 506 N.E.2d at 1095. *See also Jenkins*, 627 N.E.2d at 797 ("A showing of sufficient skill,

knowledge, or experience in the field is all that is required to allow a trial court to find that a witness'

opinion or inference will aid the trier of fact in the search for the truth.") And only one

characteristic is necessary to qualify an individual as an expert. *Burnett*, 815 N.E.2d at 204. An

individual may qualify as an expert based upon practical experience alone. *Otte v. State*, 967 N.E.2d

540, 547 (Ind. Ct. App. 2012) (*see also Lowery v. State*, 478 N.E.2d 1214, 1227 (Ind. 1985) (finding

practical experience may qualify one as expert as readily as formal training). No precise quantum of

knowledge is required if the witness shows a sufficient acquaintance with the subject. *Fox*, 506

N.E.2d at 1095.

A hearing outside the presence of the jury can be held on a motion in limine challenging

expert testimony. *See, e.g., Howerton v. Red Ribbon, Inc.*, 715 N.E.2d 963, 965 (Ind. Ct. App. 1999).

*Cf. Bowens v. State*, 481 N.E.2d 1289, 1290 (Ind. 1985) ("Prior to trial the trial judge granted

Defendant's motion in limine to prevent [witness] from testifying that the stains were, in fact,

gunpowder burns since she was not a chemist or an expert witness on the subject.")

There is no particular "bar" that an expert witness must get over before he may testify, other

than what is determined by the trial court; that is, admissibility of expert testimony is within the

discretion of the court. *Bennett v. Richmond*, 960 N.E.2d 782, 786, 791 (Ind. 2012). Once the

admissibility of the expert's opinion is established under Rule 702, "then the accuracy, consistency,

and credibility of the expert's opinions may properly be left to vigorous cross-examination,

presentation of contrary evidence, argument of counsel, and resolution by the trier of fact." *Sears

Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 461 (Ind. 2001). And at that point, it is then the jury's

Lana Canen v. Dennis Chapman, et al.
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 11

task to decide the degree of deference given to an expert witness's testimony. *Laux v. State*, 985 N.E.2d 739, 754 (Ind. Ct. App. 2013), *transfer denied*, 987 N.E.2d 521 (Ind. 2013). The fact finder is entitled to weigh and determine the credibility of the expert's opinion based on the evidence presented, including the extent of the witness's experience and expertise, the reliability of the analytical methods employed, and the degree of certitude with which the opinion is cast. *Id.* (citing *Strong v. State*, 538 N.E.2d 924, 931 (Ind. 1989)). *See also Jenkins*, 627 N.E.2d at 795 (finding conflicting expert opinions should be brought out during cross-examination, and final analysis is left in hands of jury).

**Materiality element.** As to the materiality element of *Brady*, evidence is material in the *Brady* context if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Thus, if confidence in the outcome of the trial is undermined by the reasonable probability of a different outcome, the evidence is material and the defendant suffered prejudice. *Beaman*, 7 F. Supp. 3d at 822.

**B.     Chapman committed no *Brady* violation, as he accurately provided information about his fingerprint experience and training, as information about experience and training he did not have was available through reasonable diligence and is not *Brady* evidence, and as such information was not material.**

**1.     Information regarding training or experience that Chapman did not have is not *Brady* evidence, and it is not exculpatory or impeaching.**

Is information about the training and experience of an expert "evidence" governed by *Brady*? And more to the point here, what about information regarding training and experience an expert

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 12

doesn't have—is that *Brady* evidence? Canen's suit assumes that it is, but she provides no authority

for this.

Information about training and experience an expert does not have is not "evidence tending

to establish a criminal defendant's innocence," so it is not exculpatory evidence. *See Evidence*, Black's

Law Dictionary. And information about training or experience an expert does not have is not

impeachment evidence as contemplated by Indiana or Federal Rules of Evidence 607 and 608,

because training or experience an expert does not have does not affect his character for truthfulness

or untruthfulness. Stated otherwise, information regarding training and experience an expert does

not have does not go to the issue of whether the witness is telling the truth (that is, veracity); rather,

it goes to the weight of the evidence.

The evidence at hand was lifter M, which was available to both sides. In *United States v.*

*Banks*, 546 F.3d 507 (7th Cir. 2008), the Seventh Circuit affirmed an order for a new trial after a

conviction where the prosecution's Drug Enforcement Administration (DEA) forensic chemist had

misused her government-issued credit card, creating a possible conflict of interest that might affect

her credibility. Finding a new trial unnecessary, Judge Easterbrook dissented, and in his dissent he

explained impeachment evidence in the *Brady* context:

> The premise of [*United States v. Bagley*, 473 U.S. 667 (1985)], which extended *Brady* . . .
> from primary exculpatory evidence to material that could be used to impeach a
> witness, is that a witness's credibility can be vital to the strength of the prosecution's
> case. That will be so when the testimony is not verifiable (the witness testifies to
> something seen or heard, for example). It is not so when the witness's contentions
> can be checked by a third party. If, for example, a witness testifies that a particular
> document contains particular language, the best way to find the truth is to look at the
> document, not to inquire whether the witness has a felony conviction or is in
> financial trouble or has told a contradictory story to someone else.
>
> Everything that [the prosecution expert] said could have been checked. The question
> at hand was whether the seized substance is cocaine, not whether [the prosecution
> expert] had analyzed that substance correctly (or was telling the truth about her own

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 13

> analysis). Conviction (or acquittal) depends on what the substance actually is. *Cf.*
> *United States v. Moon*, 512 F.3d 359 (7th Cir. 2008) (lab results are not "testimonial"
> under the confrontation clause).
>
> *Brady* applies only to evidence that is known to the government but not the defense.
> The seized substance, however, was available to the defense. . . . More: the substance
> could have been analyzed by the defense. The Treasury would have paid for a
> chemist to analyze it on defendant's behalf. 18 U.S.C. § 3006A(e)(1). Because the
> substance was available to both sides, there cannot have been a *Brady* problem.

*Id.* at 515 (Easterbrook, J., dissenting). Here, Chapman's analysis regarding the fingerprint evidence

contained on lifter M could likewise be checked by a third party. The question at hand was whether

lifter M was Canen's fingerprint, not whether Chapman had analyzed lifter M correctly or should

have provided information about training and experience he did not have. Canen received

Chapman's report. She had access to lifter M, which she had analyzed by her own expert when the

Public Defender's Office sent retired Elkhart City Police Detective Charles Lambdin ("Lambdin")

to examine the fingerprint evidence (incidentally, he did not contradict Chapman's conclusion). And

she does not claim that lifter M was falsified. And so regardless of whether information about

training and experience Chapman did not have could be said to have been suppressed—it cannot—

or whether that information was material—it was not—with the fingerprint evidence available to

both sides there was no *Brady* problem.[2] *Id.*

---

[2] Canen does not appear to argue that a fingerprint expert has a duty under *Brady* to self-screen his own experience and training and recuse himself from fingerprint analysis or decline the prosecutor's assignment if he believes he is not qualified. If she is making this argument, it must fail as it is unrelated to suppression of evidence under *Brady*.

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 14

  **2.**  **Chapman did not deliberately withhold or knowingly suppress information about his experience or training, and information about his experience or training—including any experience or training he did not have—was available to Canen through reasonable diligence.**

   Even if information about training and experience that Chapman did not have could be evidence under *Brady*, Chapman did not suppress it. Further, this information was available to Canen through the exercise of reasonable diligence.

   Chapman had extensive training and experience analyzing, comparing, evaluating, and verifying fingerprints, starting with his successful completion of twelve weeks of Federal Bureau of Investigations ("FBI") fingerprint instruction in 1976. After that, he worked as a fingerprint analyst for the FBI for the next two years. The year that Chapman left the FBI, he started with Cook Nuclear Plant, where he worked in a security position for six years. In that position, one of his duties was reviewing fingerprint cards to ensure they were acceptable for submission. In the 1990's, during his five years as a patrol officer for the Sheriff's Department, he recovered fingerprint impressions from crime scenes. After that, Chapman became a property detective and on many occasions compared and analyzed fingerprints for the Sheriff's Department's records division. In August 2000, Chapman attended the Integrated Indiana Crime Scene School, a four-week course taught by the Indiana State Police. The program included training on various aspects of crime scene investigation, and one of the lectures was titled "Latent Prints." Once Chapman completed this program, he became one of two crime lab technicians for the Sheriff's Department. In that role, one of his responsibilities was to examine and compare fingerprints. He compared known prints on ten-print cards to known prints on other ten-print cards, and he also examined latent fingerprints taken from crime scenes to compare them to known prints. In his evaluation of fingerprints, Chapman referred to books related to the analysis of fingerprints kept in the Sheriff's Department's crime scene

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 15

laboratory. Members of the Sheriff's Department asked Chapman to examine latent fingerprints taken from crime scenes, and so did members of the Elkhart City Police and members of the Goshen City Police. From the time that Chapman first became a crime lab technician with the Sheriff's Department until the time when he was asked to examine fingerprints pertaining to the Sailor murder case, he conducted approximately thirteen fingerprint examinations involving latent fingerprints taken from crime scenes and numerous additional fingerprint examinations involving the comparison of ten-print cards.

Chapman did not withhold information about his training and experience. He responded truthfully to all questions, including those about his background training and work. Prosecuting Attorney Vicki Becker ("Becker") was aware of Chapman's credentials. She knew he had worked for the FBI classifying fingerprints and that he had worked for the Sheriff's Department in the crime laboratory doing a variety of forensic exercises, including fingerprint analysis. And Becker had worked with Chapman in prior cases involving fingerprint analysis. When Becker used Chapman as an expert witness for the Canen matter, she knew that Chapman's training and work at the FBI pertained to comparing known prints. When asked at trial how many fingerprint comparisons he had made in the past several years, Chapman said, "Not right off the top of my head. Several— maybe 100 or so." Ex. D-Trial Tr. 617. No one today questions whether that is true—it was true, and Chapman had the experience he said he had. No follow-up questions were asked Chapman to probe how many of those comparisons were of latent prints and how many were not. The first time that latent prints were mentioned in questioning at trial was after that. Ex. D-Trial Tr. 618. Chapman had no motive to hide any information about the training and experience he had or did not have. He did not know Canen and had no personal stake in the outcome of trial.

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 16

What information does Canen believe that Chapman withheld regarding training and education that he did not have? As for experience, she states that "Chapman had no experience with latent print identification . . ." Mem. 14, but that is incorrect. As explained above, Chapman had latent print identification experience. As for training, Chapman had training in fingerprint analysis throughout his career, and no specialized latent print certification or training qualifications are needed for a fingerprint expert to testify in court regarding latent prints:

> There are no qualifications necessary to render an individual a "latent print expert"; whether to let an individual testify as such is entirely up to the court. There is, however, a certification program, administered by a professional organization, the International Association for Identification (IAI). Upon creating the certification program, the IAI specifically stated that lack of certification should not be construed as rendering a purported expert unqualified to testify as an expert witness.

Simon A. Cole, *More than Zero: Accounting for Error in Latent Fingerprint Identification*, 95 J. Crim. L. & Criminology 985, 994 (2005). Canen's post-conviction relief expert, Kathleen Bright-Birnbaum ("Bright-Birnbaum), testified that she is not aware of a requirement that a latent print examiner be IAI-certified. Ex. E-Aug. 16, 2012 Tr. 39. As with any other scientific endeavor that involves human beings, latent print examination is not infallible, and cases of erroneous identifications in latent print casework have been documented. Ex. V-Peter E. Peterson et al., *Latent Prints: A Perspective on the State of the Science*, Forensic Science Communications (Oct. 2009), https://www.fbi.gov/about-us/lab/forensic-science-communications/fsc/oct2009/review. Agencies recognize that human errors do not necessarily equal examiner incompetence; highly qualified individuals can make errors. *Id.* When Chapman reviewed Bright-Birnbaum's fingerprint analysis report contradicting Chapman's earlier analysis, Chapman concluded he had been mistaken and he acknowledged his error. This cuts against the idea that Chapman was deliberately withholding anything, because a witness deliberately

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 17

withholding information might have doubled-down to defend his earlier analysis and keep

suppression hidden.

The fact that Lambdin did not contradict Chapman's results would have given Chapman

even more reason to believe that his own experience and training was sufficient for the task at hand.

Lambdin was a fingerprint analyst with experience in analyzing latent fingerprints. Canen's attorneys

sent him to look at the fingerprint evidence, and while Lambdin could not give a conclusive opinion

as to whether they were a match, he did not argue against Chapman's conclusion. His analysis

unchallenged by Lambdin, Chapman had no reason to believe there was any experience or training

he lacked, let alone that there was any information about experience or training he did not have that

needed to be identified and provided.

Further, the post-conviction relief order suggests that Chapman's experience and training

was sufficient. Canen notes that the trial judge's post-conviction relief order dated October 12, 2012,

found Canen's attorney had no reason to question Chapman's qualifications. *See* Mem. 20, ECF

No. 29; Oct. 12, 2012 Order 5, ECF 30-3. The Indiana state criminal post-conviction relief

standards do not control the elements of federal *Brady* claims governed by Section 1983, so the order

does not speak to the concept of reasonable diligence built into the *Brady* suppression element.

However, the order's basis for there being no reason to question Chapman's qualifications was

Chapman's trial testimony about training with the FBI, working for the FBI, and his work and

experience with fingerprints after the FBI. All of this testimony was true. Which means the reason

the trial court said that Canen's counsel didn't render ineffective assistance was because the trial

court found that Chapman's training and experience was sufficient to conduct the fingerprint

comparison.

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 18

Arguing that Chapman was not qualified to testify regarding latent prints, Canen cites *Burnett*, Mem. 15, but *Burnett* does not undermine Chapman's latent print qualifications, it supports them. In *Burnett*, the Indiana Court of Appeals affirmed the trial court's decision to let an officer testify about latent prints, even though he was not certified as a latent fingerprint examiner. *Burnett*, 815 N.E.2d at 204-06. It wrote: "[A]lthough only one characteristic is necessary to qualify an individual as an expert, the trial court in this case identified two characteristics that, in its view, qualified [the officer] as a fingerprint expert, namely, his practical experience as a senior crime scene manager and his more recent training in fingerprint identification." *Id.* at 206. And thus the officer's prior practical crime scene manager experience, as one of these characteristics, was enough by itself to qualify him as a fingerprint expert. Chapman's experience exceeds this. Prior to Canen's trial, Chapman had five years of experience dusting for and retrieving fingerprint impressions from crime scenes, two years of experience comparing and analyzing fingerprints given to him while a property-crimes detective, and five years of experience examining and comparing fingerprints—including latent fingerprints— as a crime lab technician, plus his early years of working with fingerprints with the FBI and at Cook Nuclear Plant. The *Burnett* officer's other qualifying characteristic was his more recent fingerprint identification training, which apparently included some latent print training. *Id.* at 205, 206. Chapman, too, had latent print education at the Integrated Indiana Crime Scene School in August 2000. But the court only needed to find one qualifying characteristic, and the *Burnett* expert's practical experience was sufficient alone. Under the same test, Chapman qualifies.

This discussion shows that Chapman accurately provided his latent print experience and training to the prosecutor's office, which was already knowledgeable about Chapman's prior fingerprint work. And it shows that Chapman was not missing any training or experience that he needed to review crime scene fingerprint evidence and testify at trial—or, for that matter, any reason

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 19

for him to think he was missing necessary training or experience. Under these facts, Chapman

cannot be said to have deliberately withheld or knowingly suppressed evidence, even if information

about training and experience he did not have could be *Brady* evidence.

### Failure to exercise reasonable diligence

Earlier, Canen argued that her own counsel had not properly investigated Chapman's

qualifications. In Canen's amended petition for post-conviction relief, she wrote, "Had trial counsel

properly investigated Detective Chapman's lack of qualifications, he would have learned that

Detective Chapman was not qualified to determine the source of the latent print." Ex. G-Canen

Am. PCR Pet. 5-6. If Canen argued then that her counsel would have learned Chapman's alleged

"lack of qualifications" if he had properly investigated, why is she now arguing that her counsel

could not have discovered Chapman's alleged "lack of qualifications" through exercise of reasonable

diligence?

Today, Canen concedes again that her own counsel should have done more. She writes: "In

hindsight, everyone agrees that Canen likely would have been better off if her attorney took the risk

and challenged Chapman's claims that he had done hundreds of fingerprint identifications, and

drawn the distinction between latent print identification and comparing rolled prints." Mem. 22.

And she writes that Chapman's fingerprint identification was the "linchpin of the case against

Canen." Mem. 18. If so, then why didn't she investigate Chapman's experience and training? If it

was insufficient, why didn't she challenge it? Faulty expert testimony is exposed through the

adversary process; the *Brady* requirement simply ensures that the defense has all material exculpatory

evidence for use during cross-examination. *Stinson*, 2015 WL 5011961, at *10. In any case, Canen's

argument that her attorney should have "challenged Chapman's claims that he had done hundreds

of fingerprint identifications" would have gotten nowhere. Chapman testified that he had made

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 20

"several—maybe 100 or so" fingerprint comparisons in the past several years, and that was a true statement. Ex. D-Trial Tr. 617. That Canen wishes her attorney should have "drawn the distinction between latent print identification and comparing rolled prints" is not a challenge to Chapman's testimony, but simply an observation on a line of inquiry that Canen's counsel didn't explore.

The types of reasonable diligence that Canen did not exercise include:

**Canen took no pre-trial deposition of Chapman.** In Canen's summary judgment memorandum, she argues that her counsel should not have asked Chapman questions about his experience in front of the jury, because this would have risked making him appear more credible. Mem. 21-22. She writes, "But since [Canen's counsel] did not know the answers beforehand, he did not know if Chapman's answers would bolster his credibility." Mem. 22. But that concern would have been easily resolved by a pre-trial deposition. Before trial, the prosecution disclosed Chapman as an expert witness and turned over his fingerprint comparison report to Canen. Canen could have explored Chapman's experience and training in the deposition to find out whether it was worth challenging in front of the judge and jury, but she did not do so.

**Canen did not conduct a *voir dire* examination of Chapman.** Canen conducted a *voir dire* examination of an Elkhart Police Department detective. Ex D-Canen Certified Trial Tr. 668:17-669:14. She could have also conducted a *voir dire* examination of Chapman (in the presence of the jury or outside the presence of the jury), but she did not do so.

**Canen did not cross-examine Chapman on his credentials.** Had Canen taken a pre-trial deposition of Chapman and felt his experience and training were weak, she could have cross-examined him at trial. If his experience and training had been weak—in reality, they weren't—it might have helped with cross-examination. *See Buckley*, 20 F.3d at 796. But Canen did not do this.

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 21

**Canen did not hire her own fingerprint expert to testify at trial.** In a case that Canen argues turns on the identification of a fingerprint, she could have hired her own expert analysis of the fingerprint to testify. When the Public Defender's Office asked Lambdin to examine the fingerprints, Lambdin did not contradict Chapman's results. Canen did not call Lambdin to testify at trial, and she did not hire another expert to review the fingerprint evidence and testify at trial.

**Canen did not challenge Chapman's testimony with a Rule 702 motion, a motion in limine, or other objection.** Canen could have filed a motion under Indiana Rule of Evidence 702 or a motion in limine challenging and objecting to Chapman's testimony, perhaps based on information learned at a pre-trial deposition. The jury would not have known about this motion, so there would have been no risk of bolstering Chapman's credibility in front of the jury. Or Canen could have objected to questions asked to Chapman in front of the jury. But, again, Canen did not do this.

> **3.    There is no reasonable probability that prejudice ensued when Chapman accurately provided information about his experience and training.**

Even if information about training and experience that Chapman did not have could be *Brady* evidence, and even if Chapman deliberately withheld this information, and even if it was not discoverable through the exercise of reasonable diligence, how would the proceedings have been different if Canen had known this information? Lambdin would not have changed his own analysis of the fingerprint evidence. Would Canen have tried to exclude Chapman via Indiana Rule of Evidence 702? It wouldn't have changed anything if she did. Chapman had the fingerprint experience he needed to be qualified to testify about the fingerprints—he didn't need special IAI certification to analyze latent prints, and he had experience analyzing latent prints. And Canen didn't challenge whether the fingerprint was hers.

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 22

It is true that if Chapman had not made a mistake in his analysis, the trial result might have been different, as the criminal trial would have proceeded against Canen without the fingerprint evidence. But his analytical mistake is not the issue here. The issue is whether Canen's case would have been different if she knew that Chapman did not have certain training and experience. And on that issue, there is not reasonable probability that the proceeding would have been different or that prejudice ensued, so the evidence is not material in the *Brady* context. *See Cone*, 556 U.S. at 470.

> **C.**    **Chapman is entitled to qualified immunity because his conduct did not violate clearly established statutory or constitutional rights.**

> > **1.**    **Governmental actors performing discretionary functions are shielded from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.**

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 349 (1986). If the law did not put the defendant on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). To determine whether a defendant is entitled to qualified immunity, a court must consider two questions: (1) whether plaintiff has alleged or shown a violation of a constitutional right and (2) whether the right at issue was clearly established when the alleged violation occurred. *Pearson*, 555 U.S. at 232. Under this standard, an officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 23

question beyond debate. *Kingsley v. Hendrickson*, No. 12-3639, 2015 WL 5210679, at *2 (7th Cir. Sept.

8, 2015) (citing *City & Cty. of San Francisco, Cal. v. Sheehan*, 135 S.Ct. 1765, 1774 (2015)).

Although qualified immunity is a defense, the plaintiff bears the burden of defeating it.

*Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003). Judges are permitted to exercise

their discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand. *Pearson*, 555 U.S. at 236.

There are two ways a plaintiff can show a right is clearly established: (1) he can point to an

analogous case establishing the right to be free from the conduct at issue or (2) he can show that the

conduct was so egregious that no reasonable person could have believed that it would not violate

clearly established rights. *Beaman*, 7 F. Supp. 3d at 830; *Steidl*, 494 F.3d at 632.

> **2.     Chapman did not violate a constitutional right, and no clearly
> established constitutional right required Chapman to volunteer
> unsolicited information regarding experience and training that he did
> not have.**

Canen cites no cases before or since her murder conviction that require a prosecution expert

in a criminal case to provide information about experience and training that he does not have,

particularly when no one asks him about the experience and training he does not have. That type of

information is not *Brady* evidence, and it would not have been material here. A detective should not

lie, but this is not a case about lying. Although on that topic, a comment regarding absolute

immunity—which Chapman pled as an affirmative defense—should be made here. Canen writes

that "Canen's counsel had no reason to believe that Chapman was being deceptive when testifying

about his qualifications." Mem. 22. If Canen is suggesting that her claim is based upon Chapman

lying at trial or in preparation to testify for trial, then Chapman has absolute immunity. Witnesses

have absolute immunity from suit on claims stemming from their testimony at trial and, as a

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 24

corollary, from their preparation to testify at trial. *Stinson*, 2015 WL 5011961, at *6 ("Even if [the

expert witnesses] testified falsely at [the criminal defendant's] trial, that testimony can't be the basis

of a civil suit against them.")

Canen does not suggest that Chapman fabricated evidence. Nor does she cite any cases that

state that the training and experience an expert does not have are evidence under *Brady*. As discussed

above, they aren't. Instead, Canen cites *Newsome*, Mem. 23-24, which holds it clearly established that

police cannot withhold from prosecutors exculpatory information that (1) the defendant's

fingerprints did not match those obtained at the crime scene and (2) witnesses had been coached to

select the criminal defendant from a lineup (and had earlier selected mug shots that did not contain

the defendants' photo), *see Newsome*, 256 F.3d at 749, 752. *Newsome* does not address expert witness

experience and training (or lack thereof) and there is no suggestion here that Chapman suppressed

crime scene fingerprints.

Canen had a right that the Indiana Rule of Evidence 702 process be open to her for

challenging Chapman as an expert witness. But that's not the right at issue here, and there is no

suggestion that Canen was not permitted the protections of Rule 702. Nor is there any suggestion

she was prevented from deposing Chapman before trial, filing a motion in limine against his

testimony, objecting to his testimony, conducting a *voir dire* examination of him outside the presence

of the jury, cross-examining him, or hiring her own expert.

Chapman accurately answered questions about his experience, and his experience included

latent fingerprint examination experience (and latent print education as part of the Integrated

Indiana Crime Scene School). Lambdin did not contradict Chapman's analytical conclusions, which

gave Chapman further reason to believe he was correct and that his experience and training were

sufficient. And when Chapman read Bright-Birnbaum's report and realized that his analysis had

*Lana Canen v. Dennis Chapman, et al.*
U.S. District Court, N.D. Ind., South Bend Div., Case No. 3:14-CV-00315
Dennis Chapman's Memorandum of Law
Page 25

been incorrect, he admitted his mistake. No part of this process violated any clearly established right

of Canen, under the standards of 2005 or the standards today. The Court should dismiss Chapman

on the basis of qualified immunity.

## IX.    Conclusion

The Court has before it cross-motions for summary judgment filed by Canen and Chapman.

Chapman committed no constitutional violation, and he has qualified immunity because he violated

no clearly established rights of Canen. The Court should grant summary judgment for Chapman,

dismissing him from suit, and deny summary judgment to Canen.

YODER, AINLAY, ULMER & BUCKINGHAM, LLP
Attorneys for Defendant Dennis Chapman


By  /s/ Michael F. DeBoni
Michael F. DeBoni (#12434-20)
Nathaniel M. Jordan (#23625-20)
Landon K. Richmond (#32124-20)
130 N. Main Street, P.O. Box 575
Goshen, IN 46527-0575
Telephone: (574) 533-1171
Facsimile: (574) 534-4174
mdeboni@yaub.com
njordan@yaub.com
lrichmond@yaub.com


## Certificate of Service

The undersigned certifies that on the 10th day of September 2015, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification

of filing to all counsel of record.

 s/Michael F. DeBoni
Michael F. DeBoni