UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LANA CANEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 3:14-cv-315-RL-CAN |
| | ) |
| DENNIS CHAPMAN and | ) |
| MARK DAGGY, | ) |
| | ) |
|     Defendants. | ) |

## MOTION TO STRIKE AFFIDAVIT OF DENNIS CHAPMAN

Plaintiff, by counsel, respectfully requests that the Court strike portions of the Affidavit of Dennis Chapman (Doc. #42-1), and in support would show:

Defendant Dennis Chapman filed, in support of his motion for summary judgment and in opposition to Plaintiff's motion for summary judgment, his own affidavit. This affidavit includes testimony that contradicts sworn testimony that Chapman has previously given, and therefore should be stricken pursuant to the "sham affidavit" rule.

"A 'sham affidavit' is an affidavit that is inadmissible because it contradicts the affiant's previous testimony … unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse. *Cook v. O'Neill*, -- F.3d --, 2015 WL 5568622, *2 (7th Cir. Sept. 23, 2015). "Parties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions." *Miller v. AH Robbins Co.*, 766 F.2d 1102, 1105 (7th Cir. 1985). "Thus, when a conflict arises between a [party's] own sworn deposition and his sworn affidavit, the deposition testimony overrides the statements in the affidavit." *Piscione v. Ernst & Young, LLP*, 171 F.3d 527, 532 (7th Cir. 1999).

The following statements in Chapman's affidavit should be stricken pursuant to the "sham affidavit" rule:

Paragraph 13

In ¶ 13, Chapman asserts, "In 2000, I attended a four week training program that was taught by the Indiana State Police. The program was designed to enhance skills and teach detectives how to process crime scenes, collect fingerprints, shoe impressions, tire impressions, and reconstruct crime scenes by drawing. My course textbook was titled, *Techniques of Crime Scene Investigation*, Barry A.J. Fisher. I also participated in the lecture titled, *Latent Prints*."

To the extent that this passage suggests that the course involved training on latent print comparison, it is inconsistent with Chapman's prior testimony in the PCR Hearing. At the PCR Hearing, Chapman testified that this training did not involve latent fingerprint comparisons, and only involved with "processing crime scene[s]." (PCR Tr. 90-91) (Attached to this motion as Exhibit A).

Paragraph 15

In ¶ 15, Chapman asserts: "As a crime scene technician with the ECSD, one of my responsibilities included examining fingerprints." To the extent that this passage suggests that one of his job responsibilities was comparing fingerprints, it is inconsistent with his deposition testimony. At his deposition, Chapman testified that he did do fingerprint comparison on a handful of occasions, but that this was not "part of his job." (Chapman Dep. 49) (Attached to this motion as Exhibit B).

Paragraph 22

In ¶ 22, Chapman asserts, "Based on my prior training with the FBI and continued work with the ECSD after I left the FBI, I believed I had the appropriate experience and training to analyze the fingerprints related to the Helen Sailor murder investigation."

This is inconsistent with his testimony at the PCR Hearing. At the PCR Hearing, Canen's attorney asked Chapman about his earlier testimony concerning his experience in doing latent print comparison. Chapman had testified previously that he had compared over a thousand latent prints. (PCR Tr. 101). At the hearing, Chapman admitted that he had not done that many latent comparisons; when he said he had done more than a thousand comparisons, he was talking about comparing two sets of known prints. (PCR Tr. 102). After saying that this was a misunderstanding rather than a deliberate lie, the Prosecutor asked Chapman whether "when you were asked to look at this latent of Ms. Canen, did you ever consider saying, you know what, maybe I shouldn't?" Chapman replied, "Yes." When asked why he did not bring it to someone's attention, he responded, "Well, I was trying to help out Elkhart City." (PCR Tr. 102).

It is clear that the Prosecutor was asking whether Chapman had any reservations about doing the latent print analysis in the Sailor murder investigation due to his lack of training and experience in latent print comparison. The questions from Canen's lawyer immediately preceding this were about his experience performing latent print comparisons, and his admission that he had not done hundreds or thousands of such comparisons, despite his testimony that he had. So when Chapman was asked if he ever considered saying, "maybe I shouldn't," the question unambiguously asked about misgivings due to his limited experience. Chapman's attempt to walk this admission back through his affidavit must fail.

Respectfully submitted,

s/ Michael K. Sutherlin
Michael K. Sutherlin, Atty. #508-49

s/ Samuel M. Adams
Samuel M. Adams, Atty. #28437-49

CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Michael F. DeBoni
Nathaniel M. Jordan
mdeboni@yaub.com
njordan@yaub.com

Martin W. Kus
David P. Jones
mwkus@nlkj.com
dpjones@nlkj.com

s/ Samuel M. Adams
Samuel M. Adams

Michael K. Sutherlin and Associates
P.O. Box 441095
Indianapolis, IN 46244
Phone: (317) 634-6313
Fax: (317) 631-8818
Email: msutherlin@gmail.com